## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                      |     |                          |
|--------------------------------------|-----|--------------------------|
|                                      | *   |                          |
| **RAYMOND GENE CULLISON**            | *   |                          |
| **Plaintiff**                        | *   |                          |
| **v.**                               | *   | **CIVIL NO.  JKB-15-3544** |
| **QUEEN ANNE'S COUNTY ET AL.,**      | *   |                          |
| **Defendants**                       | *   |                          |

\* \* \* \* \* \* \* \* \* \* \* \*

### <u>MEMORANDUM</u>

Pending before the Court are Defendant Queen Anne County's motion to dismiss (ECF No. 18), Plaintiff's motion for leave to file an amended complaint (ECF No. 21), and Defendants Jones, Layton, and Stouffer's motion to seal exhibits A, B, C, and E of their motion to dismiss (ECF No. 23), all of which are unopposed (ECF Nos. 21; 22), and all of which will be granted.

Also pending is Defendants Stouffer, Jones and Layton's motion to dismiss or, in the alternative, motion for summary judgment.  (ECF No. 25.)  That motion is fully briefed (ECF Nos. 30; 31), and no hearing is required, Local Rule 105.6 (D. Md. 2016).  The motion will be granted.  Plaintiff's motion for leave to file response to Defendants' reply brief to the afforementioned motion (ECF No. 34) (technically a motion to file a surreply) is opposed by Defendants Stouffer, Jones and Layton (ECF No. 35); the motion will be denied.

Furthermore, the docket reflects no evidence that service has been effected on Defendants Rob Penny or the State of Maryland.  Therefore, the Court will require Plaintiff to show cause that those defendants not be dismissed from the case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## I.    *Background*[1]

Plaintiff Raymond Gene Cullison, Jr. ("Cullison") was arrested on December 19, 2012 for the murder of Larry Gears ("Gears"), and was held pending trial until July 11, 2013, when prosecutors declared *nolle prosequi* in the case.  (ECF No. 21-1 ¶¶ 18–24.)[2]

In 2012, Cullison had an ongoing dispute with his neighbor, Gears, stemming from Cullison's allegations that Gears' step-sons had repeatedly vandalized Cullison's home and harassed his family.  (*Id.* ¶ 9.)  Throughout 2012, Cullison made numerous complaints to the sheriff's department concerning the vandalism, and ultimately installed flood lights and a video surveillance system in an attempt to definitively establish the identities of the perpetrators.  (*Id.* ¶ 9.)  On November 20, 2012, he brought to the sheriff's department a video recording that documented the most recent incident of vandalism in which three juvenile males threw stones at Cullison's home.  (ECF 24 at 18.)  Unable to identify the perpetrators from the video, sheriff's deputies intermittently surveilled Cullison's home in the early hours of November 21, 2012. (ECF 24-1 at 2.)  However, at approximately 1:30 a.m., while the deputies were not at the house, Cullison called 911 to report yet another incident of vandalism.  (ECF No. 21-1 ¶ 10.)  Sheriff's deputies responded to the call and interviewed Cullison, Gears, and Gears' stepsons.  (*Id.* ¶ 10.) Still unable to identify either of Gears' stepsons as being among the vandals, the deputies left the scene at approximately 2:30 a.m.  (*Id.* ¶ 10.)

At 9:00 that morning, Gears' wife returned home from work to find Gears' body on the sidewalk in front of his home.  (*Id.* ¶ 13.)  She contacted emergency medical personnel, who arrived and pronounced him dead.  (*Id.* ¶ 13.)  Due to the presence blood around Gears' head and the fact that there were signs of injury to his face and hands, deputies at the scene immediately identified the possibility of a homicide and began an investigation into the circumstances of his

---

[1] As the non-movant on the motion for summary judgment, facts are recited here in the light most favorable to Mr. Cullison.

[2] All paragraph and page numbers refer to the parties' original documents, as opposed to ECF pagination.

death.  (*Id.* ¶ 14; ECF No. 24 at 12.)   Cullison and the members of Gears' household all voluntarily submitted to questioning, and after obtaining a search warrant, deputies also seized video footage from Cullison's surveillance system.  (ECF No. 21-1 ¶¶ 14, 15.)  Review of that footage ultimately showed that after the deputies left the scene, Cullison exited his house in the direction of Gears' residence (passing out of the frame of his surveillance cameras) at approximately 2:38 a.m., returning to his property at 2:42.  (ECF No. 24-2.)  The footage also showed Cullison aiming what appears to be a rifle (Cullison identifies it as a BB gun) in the direction of the Gears home, holding that position from 2:51 to 2:54 a.m., until he eventually returned to his home.  (*Id.*)  The camera did not record any other activity until Gears' wife returned at 9:05 a.m.  (ECF No. 24 at 26.)

Based on hemorrhages in the face and neck and a broken hyoid bone,[3] the medical examiner's report ultimately concluded the cause of Gears' death to be asphyxia by strangulation.  (ECF No. 24-3.)  The sheriff's department's investigation continued through December 19, 2012 when Cullison was charged with and arrested for Gears' murder.  (ECF No. 25-3.)  The grand jury indicted him for the same on January 14, 2013 (ECF No. 25-5) and he was held in custody until the State's Attorney's Office terminated their prosecution on July 11, 2013 (ECF No. 21-1 ¶ 24).

Cullison challenges the legality of his search, arrest, and detention and accordingly has filed suit against Queen Anne's County, the State of Maryland, and four individual defendants whom Plaintiff identifies as members of the Queen Anne's County Sheriff's Department: Stephen E. Stouffer, Morris Jones, Jr., Bruce Layton, and Rob Penny.  (ECF 21-1.)

---

[3] The hyoid bone, located in the front of the neck, between the lower jaw and the larynx, serves to anchor the tongue.  Warren Andrew, *Human Skeletal System: Interior of the Cranium*, Encyclopedia Britanica (September 2, 2016, 8:45 a.m.), https://www.britannica.com/science/human-skeletal-system/Interior-of-the-cranium#ref470803.

## II.      Standard for Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

## III.      Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to

4

defeat a motion for summary judgment.  *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  *Id.*

## IV.     *Allegations of the Complaint*

Cullison alleges that Sergeants Jones and Layton knowingly or recklessly provided Corporal Stouffer with false information, which he then used to obtain the warrant for Cullison's arrest and which he also presented to the Grand Jury as a basis for its indictment.  (ECF No. 21-1 ¶¶ 17, 21.)  Specifically, Cullison denies having made statements attributed to him that he was going to take the law into his own hands with respect to the ongoing conflict with Gears, that something bad was going to happen, and that he was not afraid to go to jail.  (*Id.* ¶ 17.)  He also alleges that the sheriff's deputies falsely claimed that he had martial arts training.  (*Id.*)  Cullison points to the absence of eyewitnesses or forensic evidence that would have connected him to Gears' murder, as well as the presence of exculpatory evidence including surveillance video indicating that he was off of his property for only a brief period and Gears' daughter's statement that she saw Gears alive and uninjured after the time which Cullison returned to his property. (*Id.* ¶ 18.)  Cullison further alleges that even the conclusion that Gears was strangled to death was the result of the misrepresentation of evidence by the Defendants.  (*Id.* ¶ 18.)

The sixteen counts of Cullison's amended complaint constitute eight causes of action, each of which is duplicated to include alternate theories of liability against Queen Anne's County

(Counts I–VIII) and the State of Maryland (Counts IX–XVI), and their respective agents.  (ECF No. 21-1.)  The Plaintiff's alleged causes of action against the government entities include False Arrest (Counts I and IX), False Imprisonment (Counts II and X), Malicious Prosecution (Counts III and XI), Intentional Infliction of Emotional Distress (Counts IV and XII), violations of the Maryland Declaration of Rights (Counts V and XIII), *Longtin*[4] claims alleging violations of Articles 24 and 26 of the Maryland Declaration of Rights (Counts VI and XIV), and *Monell*[5] claims pursuant to 42 U.S.C. §1983 (Counts VIII and XVI).  *Id.*  Cullison charges each of the individual defendants with violations of the 4th and 14th Amendments brought pursuant to 42 U.S.C. §1983 (Counts VII and XV) as well as joining them with the governmental defendants on all other Counts except the *Longtin* (Counts VI and XIV) and *Monell* (Counts VIII and XVI) claims.  *Id.*

## V.    Analysis

### A.         Motion for Surreply

The primary issues before the Court are contained in Defendants Stouffer, Jones, and Layton's motion to dismiss / motion for summary judgment (ECF No. 25).  Nonetheless, for the sake of efficiency, the Court will first address Cullison's MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (ECF No. 34).

Cullison initially attempted to characterize this motion as a response.  (ECF No. 32.)  However, because Cullison had already filed a response to the Defendants' motion (ECF No. 30), and because Defendants filed a reply brief (ECF No. 31), this document could only be

---

[4] *Prince George's Cty. v. Longtin*, 419 Md. 450 (2011).
[5] *Monell v. Dept. of Soc. Serv. Of City of New York*, 436 U.S. 658 (1978).

characterized as a surreply. Accordingly, the Court issued an order indicating that the document was deficient, the Court's leave being required before filing a surreply (ECF No. 33).

Cullison now argues that the document should be accepted based on its purported compliance with Local Rule 103.6 (D. Md. 2016), citing case law regarding leave for a party to amend its pleadings. (ECF No. 34 ¶¶ 4, 5, 7.) However, the document in question does not set forth a second amended complaint, but on its face responds to Defendants' motion for summary judgment. (ECF No. 34-1.) Alternatively, Cullison asks the court to consider the document a supplement to its previous response. (ECF No. 34 ¶ 6.) However, a supplement to a previously docketed response to which opposing counsel have already replied is the definition of a surreply.

The Court generally does not permit surreply memoranda to be filed, Local Rule 105.2(a) (D. Md. 2016), and sees no reason to make an exception in the instant case. Cullison raises no argument he could not have made in his response. Nonetheless, even if the Court were to consider the surreply and the attached affidavit, that consideration would not—for the reasons enumerated below—change the outcome of the Court's decision on the pending motion for summary judgment.

### B.      *Constitutional Claims*

Cullison alleges that Defendants Stouffer, Jones, and Layton violated his right to be free from unlawful search and seizure as guaranteed by the Fourth and Fourteenth Amendments, thus rendering them personally liable under 42 U.S.C. §1983. (ECF No. 21-1 ¶¶ 55–59, 93–97.) He simultaneously alleges that the deputies violated his rights of security of person and freedom from unreasonable arrest under the Maryland Declaration of Rights. (ECF No. 21-1 ¶¶ 47–50, 85–88.) Article 26 of the Maryland Declaration of Rights is read in *pari materia* with Fourth Amendment of the U.S. Constitution. *Purnell v. State*, 911 A.2d 867, 882 (Md. Ct. Spec. Ap. 2006). Therefore, the Court will analyze these claims simultaneously.

The Warrants Clause of the Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.  To prevail in a civil rights claim alleging that a government officer arrested the plaintiff pursuant to a warrant based on false information, one must make the same showing as a criminal defendant seeking a *Franks*[6] hearing to contest the admissibility of evidence obtained pursuant to such a warrant. *Miller v. Prince George's Cty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007).  That is, one must show 1) that the affidavits underlying the warrant contained statements known by the affiant to be false or that the affiants acted in reckless disregard for the truth of such statements, and 2) that such false statements were necessary to a finding of probable cause. *Id.*  The showing necessary to meet the first prong "must be more than conclusory and must be accompanied by a detailed offer of proof." *U.S. v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).  An affidavit need not include every detail of an investigation, and while the decision by any affiant not to include a piece of information in an affidavit is in some sense "intentional," the preliminary showing in order to obtain a *Franks* hearing is greater—it must be of a "deliberate falsehood" or a "reckless disregard for the truth." *Id.* at 301.  Furthermore, even when the first prong is met, the party objecting to the warrant still must show that the false is essential to the probable cause determination (i.e. without the information, probable cause would not have been found). *Franks*, 438 U.S. at 171–72.

The guiding inquiry in determining whether law enforcement officers have probable cause to affect an arrest in a given situation turns on what they knew at the time concerning the suspect's conduct and on "the contours of the offense thought to be committed by that conduct." *Graham v. Gagnon*. No. 15-1521, 2016 WL 4011156, at *5 (4th Cir. July 27, 2016).  The Court

---

[6] *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

does not "impute factual knowledge to the officers that they did not have or that was not reasonably available to them." *Id.*

### 1. *Motion to Dismiss*

Defendants Stouffer, Jones, and Layton's (hereinafter, "Defendants") motion is primarily a motion to dismiss for failure to state a claim upon which relief can be granted.  They argue that Cullison has failed to meet his obligation under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), asserting that "the factual allegations in the [amended] Complaint concerning any false statements or omissions by the Deputies are 'no more than conclusions,' and therefore are not entitled to the assumption of truth."  (ECF No 25-1 at 28.)  However, the allegations in question are based on reasonably specific facts, and Cullison claims personal knowledge to contradict the veracity of at least some of the statements he attributes to Defendants.  If the facts as alleged in the Amended Complaint are accepted as true, they are sufficient to state a claim for relief.  Therefore, Cullison has pled a sufficient complaint to withstand a motion to dismiss.

Defendants present a significant quantity of evidence in support of their motion, but the Court will not consider such evidence on a motion to dismiss.  Rather, the Court accepts as true all factual allegations contained in the complaint and then asks whether those facts are sufficient to state a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In the Amended Complaint, Cullison alleges that Defendants Layton and Jones told Defendant Stouffer that Cullison made several statements to the effect that "he was going to take the law into his own hands, that something bad was going to happen if the harassment from the Gears household did not cease, and that he was not afraid of going to jail."  (ECF No. 21-1 ¶17.)

He further alleges that Stouffer in turn included that information in a warrant affidavit[7] and in his grand jury testimony. (*Id.*) Cullison denies making such statements. (*Id.*)

With respect to other statements and omissions Cullison attributes to Defendants (*see* ECF No. 21-1 ¶ 18), it is less clear that they would have violated Cullison's rights by committing the alleged conduct. For instance, they were under no obligation to include in any warrant affidavit or grand jury testimony that they found no fingerprints and received no confession connecting Cullison to Gears' death, nor were they even obliged to disclose an inconsistency in the timing of a witness' statement. *See Colkey*, 899 F.2d at 300 ("an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation"). However, with respect to the incriminatory statements that Defendants attributed to Cullison, his complaint alleges that these were a pure fabrication. Contrary to Defendants' assertion, the claim in the Complaint that the deputies made such statements falsely *is* a fact that, on motion to dismiss, is entitled to the presumption of truth.

If these allegations are accepted as true, then Cullison was arrested pursuant to a warrant based on false information and Defendants provided that information knowing it to be false, satisfying the first prong of *Franks*. Furthermore, without the inculpatory statements attributed to Cullison, the remaining evidence in the investigation (i.e. that Cullison and Gears had an ongoing conflict, that the conflict reached a climax on the night Gears died, that Gears' death was a homicide, and that Cullison may have left his home at the time of Gears' death), may fall short of the probable cause necessary to justify the warrant for Cullison's arrest, thus satisfying the second *Franks* prong. An arrest pursuant to a warrant that is not based on probable cause would be a clear violation of Cullison's constitutional rights, and if Defendants knowingly lied in

---

[7] Defendants point out that the State's Attorney's office applied for the warrant for Cullison's arrest, and indicate that Cullison has not presented evidence that the affidavit in support of that application was based on their testimony. (ECF No. 25-1 at 28.) At the pleading stage, such a showing is beyond Cullison's burden.

obtaining such a warrant, their conduct could be tortious.  Knowingly providing false and material information to a court would also disqualify them from immunity.

For all of these reasons, Cullison has stated a plausible claim for relief, rendering any motion to dismiss unsuccessful.

## 2.  *Motion for Summary Judgment*

In the alternative, Defendants also move for summary judgment.  (ECF No. 25.)  Under that theory, the Court will acknowledge the significant quantity of evidence Defendants have added to the record, and would likewise have acknowledged any evidence that Cullison had attached to his motion.  The Court interprets the evidence presented in the light most favorable to Cullison, as the non-moving party.  However, as will be discussed below, the Court finds that Defendants have met their burden to show the absence of genuine dispute as to any material fact.  For his part, Cullison fails to meet Defendants' evidence by demonstrating that a genuine dispute exists through citation to the record, addition to the record, or sworn affidavit describing what discovery he needs in order to challenge Defendants' evidence.  Therefore, the Court will find that summary judgment in the Defendants' favor is appropriate with respect to the claimed constitutional violations.

### a.  *The Evidence on the Record in the Light most Favorable to Cullison*

In support of their motion for summary judgment, Defendants have presented an abundance of documentary evidence supporting the conclusion that they were neither deliberately nor recklessly untruthful in making statements that apparently formed a basis for the warrant for Cullison's arrest.[8]  Cullison denies most of this evidence, asserting that there are "numerous facts in dispute in this case."  (*Id.* at 22.)

---

[8] Cullison has offered no evidence to support the conclusion that the arrest warrant was based on Defendants' testimony, but doing so was not necessary to survive Defendants' motion to dismiss.  *See supra* Part V.B.1.  On motion for summary judgment, it is Defendants' burden to demonstrate that their investigation did not

First of all, it is relevant to note the evidence of a dispute between Cullison and Gears, which had been going on for many months prior to Gears' death.  (ECF Nos. 21-1 ¶9; 25-1 at 35.)  Indeed, tensions between these two men had hit a high point on the very night of Gears' death, with Cullison calling the sheriff's department to report yet another in a long string of incidents of vandalism which he attributed to Gears' stepsons.  (ECF 24-1.)  Because Cullison openly acknowledges this troubled history, (ECF No. 21-1 ¶9), there is no need to tally the documents confirming the same which is to be found in the Defendant's evidence.  The Court will accept these facts as true.

Second, Defendants indicate that on the day and evening prior to Gears' death, Cullison made various statements to a number of different sheriff's deputies, painting a picture that he was approaching a personal breaking point in the ongoing conflict.   (ECF No. 25-1 at 35.)  Specifically, various deputies report having heard Cullison say that he was not willing to endure the vandalism any longer (ECF Nos. 24 at 14; 24-1 at 5); that he was going to take care of [the problem] himself (ECF No. 24 at 20); that he was about to take matters into his own hands (ECF Nos. 24 at 14, 19; 24-1 at 5); that he was willing to go to jail (ECF Nos. 24 at 14; 24-1 at 5); and that if matters were not resolved soon, something bad was going to happen (ECF No. 24-1 at 5).  Cullison "strongly contends that he never made those statements" to Defendants Jones or Layton.  (ECF No. 30-1 at 13.)  Cullison asserts in his amended complaint and in his memorandum in opposition to Defendants' motion that he never made such statements to Defendants, but he fails to put any evidence into the record or to cite any evidence that is already there.  (*See* ECF Nos. 21-1; 30-1.)  While such a denial might be sufficient to defeat a motion to dismiss, *see supra* Part V.B.1., his response fails to meet his burden under Rule 56(c).  To overcome Defendants' evidence, Cullison must present more than a mere scintilla of evidence to the contrary, *Anderson*

---

form the basis for the arrest warrant, but they have not done so.  Therefore, the Court will assume for the purposes of the present motion that the warrant application did rely on Defendants' reports.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), but he fails to present any evidence whatsoever. He offers no affidavit denying making the statements in question, let alone one in which he asserts what he actually might have said in the pertinent conversations. Neither does he acknowledge that the record contains evidence of at least two other witnesses in addition to Defendants who also attributed similar statements to him.[9]   Because Cullison has failed, by proper submission under Rule 56(c) to even *begin* to meet Defendants' proof, the Court accepts, for the purposes of evaluating the motion for summary judgment, that Defendants and their colleagues had heard Cullison make these various statements.

Third, Defendants argue that there was evidence that Gears' death was a homicide. (ECF No. 25-1 at 27, 35.)  For this conclusion, they refer primarily to the medical examiner's report, which documented Gears' broken hyoid bone along with various abrasions and contusions to his face, hand, knee and shin, and ultimately concluded that the cause of death was asphyxia by strangulation.  (ECF No. 24-3.)  For his part, Cullison disputes that there was sufficient evidence to rule out that Gears died of natural causes.  (ECF No. 21-1 ¶¶ 21, 23.)  While his amended complaint alludes to a medical expert with an alternate theory of Gears' cause of death (*Id.*), Cullison does not put any evidence of the same into the record as he is required to do by Rule 56(c).  Even if he did produce such evidence, the fact that another expert had a contrary opinion does not mean that at the time of Cullison's arrest Defendants knew of information that should have made them second-guess the conclusion of the state medical examiner.  Therefore, for the purposes of deciding this summary judgment motion, the Court concludes that the Defendants relied on the medical examiner's report in good faith.

Fourth, Defendants argue that there was reason to believe that Cullison had ample opportunity to murder Gears.  (ECF No. 25-1 at 25–26.)  Gears' daughter reported that she gave him a cigarette on the night he died, at one point indicating this happened at 3:00 a.m. (ECF

---

[9] See reports by Corporal Hampton and Detective Goodman (ECF No. 24-1 at 3, 5).

No. 24 at 31), but simultaneously maintaining that the deputies were still talking to Cullison at the time (*Id.* at 23, 31).   Because sheriff's deputies left the scene at 2:35 a.m., (*Id.* at 26), Defendants concluded that the daughter could have been mistaken about the time (ECF No. 25-1 at 26) and that Gears could have been killed between 2:38 and 2:41 a.m.—the time when surveillance video establishes that Cullison left his property, (*see* ECF No. 25-2).   For his part, Cullison relies on the portion of the daughter's second statement wherein she claims to have seen her father at 3:00 a.m., (ECF No. 30-1 at 13),[10] ignoring the fact that she also said the deputies were still on the scene when the exchange happened.   It is true that on a motion for summary judgment, the Court must take all evidence in the light most favorable to the non-moving party. Arguably, if the issue before the Court were whether Cullison killed Gears, then it be troubled by proof that Cullison returned to his property at 2:41 and that Gears' daughter saw him alive at 3:00.   However, the question at issue is what Defendants reasonably knew at the time Cullison was arrested, and Cullison has failed to point to any evidence that it was reckless for them to believe one element of the witness' statement rather than another.   The Court also need not accept Cullison's conclusion that surveillance video presents "conclusive proof that he never left his residence after approximately 2:38 a.m." (ECF No. 30-1 at 9.)   Rather, even if the Court accepts that Gears was alive when Cullison returned to his property at 2:41, Cullison fails to cite any evidence that Defendants knew that he did not leave the house again by a route outside of the cameras' view.[11]   Therefore, the Court accepts that Defendants could and did reasonably believe their representations with respect to the timing of Gears' death and Cullison's opportunity to commit the homicide.

---

[10] Cullison actually alleges that she said 3:30 a.m., but there is nothing in the record to substantiate that statement.

[11] If the Court were to accept the affidavit attached to Cullison's motion to file a surreply, then the Court would be compelled to find a diputed material fact in reference to the question of whether Cullison did or did not leave the house again after his last exit recorded on video.   However, even with that question as to the events that actually took place, it does not follow that Defendants *knew* that Cullison did not otherwise leave the house.

Fifth, Defendants also point to the surveillance video to show that Cullison appeared to aim a firearm in the direction of Gears' home, holding that position from roughly 2:51 until 2:54 a.m.  (ECF Nos. 25-2; 25-1 at 13.)  Cullison alleges that the Defendants' falsely testified to the grand jury when they reported that he aimed and fired a rifle in the direction of Gears' residence. (ECF No. 30-1 at 13.)  However, he utterly fails to confront the evidence cited by the Defendants or to provide his own evidence to the contrary.  Therefore, the Court accepts this fact as presented by the Defendants.

Sixth and finally, Defendants point to the reports of several deputies who documented the fact that on the morning Gears' body was found, Cullison's statements shifted with respect to what he reported having taken place after the deputies left the night before.  (ECF No. 25-1 at 27.)  Jones and Layton indicated that Cullison initially claimed to have returned to his home after the deputies left and that he stayed inside.  (ECF No. 24 at 40.)  Later, after being informed that investigators would gain access to his video surveillance, the deputies reported that Cullison admitted that he left the house to investigate a suspicious noise, and walked as far as the mailbox at the street.  (*Id.* at 39, 48.)  Still later, the deputies say that he acknowledged that he aimed and fired an empty pellet gun in the direction of Gears' home.  (*Id.* at 39.)  In his complaint, Cullison alleges that Stouffer "falsely testified that [he] gave conflicting statements of his whereabouts on the morning in question."  (ECF No. 21-1 ¶ 21.)  He does not address this particular point in his memorandum on the motion before the Court as to what statements he may actually have made to sheriff's deputies that morning.  Once more, Cullison offers the Court no contrary evidence that it might take in a light favorable to him, and once more, the Court is left only with those facts as presented by Defendants.

The first question before the Court is whether Defendants knowingly or recklessly presented false information in obtaining the warrant for Cullison's arrest or in their testimony before the grand jury.  Taking the facts on the record in the light most favorable to Cullison,

Defendants had reason to believe: 1) that Cullison and Gears had an ongoing conflict and that Cullison believed Gears' and his stepsons were guilty of vandalizing his home on the night of Gears death; 2) that before Gears' death, Cullison had made statements that, for example, he was going to take matters into his own hands; 3) that Gears was strangled to death; 4) that Cullison could have killed Gears during the time video shows him leaving his property or could have left the house at another time that morning via an unmonitored exit; 5) that Cullison aimed a firearm at Gears' house on the night of Gears' death; and 6) that Cullison revised his statements to law enforcement concerning his whereabouts on the night in question.  Because taken together these facts amount to probable cause for an arrest, Cullison has failed to show that Defendants violated his Fourth and Fourteenth Amendment rights.

Cullison also alleges that Defendants falsely testified before the grand jury that he had martial arts training.  (ECF No. 30-1 at 13.)  He has not provided a transcript from the grand jury to document this purported fabrication, but in the affidavit attached to his surreply, he does deny that he ever had such training (ECF No. 34-2.)  Even if the Court were to accept both of these contentions,[12] that would still only meet the first prong of the *Franks* analysis, i.e. it would indicate that Defendants may have knowingly or recklessly presented false information to bring about his continued seizure.  However, there would still have been probable cause to believe Cullison was involved in Gears' death without any evidence that he had martial arts training.

### b. *The Necessity of Further Discovery*

When a party moves for summary judgment prior to the close of discovery, an opposing party may show by affidavit or declaration that, "*for specified reasons*, it cannot present facts essential to justify its opposition."   Fed. R. Civ. P. 56(d) (emphasis added).   In such circumstances, the court may allow time for discovery.  *Id.*  Courts should hesitate before

---

[12] The Court is obliged to accept neither since the surreply will not be accepted.

denying Rule 56(d) motions "when the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by her opponent." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 196–97 (4th Cir. 2006) (referring to the predecessor to the current Rule 56(d)).   However, the nonmoving party requesting further discovery pursuant to Rule 56(d) "may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement . . . to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (internal quotation marks omitted) (holding that the district court did not abuse its discretion in granting summary judgment when the plaintiff made only "numerous vague assertions as to matters upon which the district court should have allowed discovery to continue" but failed to provide an affidavit "that particularly specifie[d] legitimate needs for further discovery").

Cullison did not include a Rule 56(d) affidavit or cite the need for discovery when he submitted his response in opposition to Defendants' motion for summary judgment.   (ECF No. 30.)   In the affidavit attached to his motion for leave to file a surreply, he did include a sentence indicating that "formal discovery is necessary to specifically challenge or oppose Defendants' allegations and some of the content of the information contained in the documents attached to Defendants' Motion to Dismiss/Motion for Summary Judgment, as Plaintiff cannot otherwise test the veracity of same." (ECF No. 34-2 ¶ 4.)   Cullison's attempted surreply includes no argument that he could not have made in his earlier response, and his motion to file it will be denied for the reasons set forth above. *See infra*, Part V.A.   Nonetheless, even if the Court accepted Cullison's surreply, it could hardly conclude that his affidavit was specific about his needs when he asserts discovery is necessary to oppose "some of the content" of Defendants' exhibits.   Cullison fails to elaborate which documents he seeks to oppose or to specify what sort of discovery he would employ to do so.   Thus, even if the Court were to accept the surreply, it would not deny summary judgment under Rule 56(d).

### c. *Defendants are Entitled to Qualified Immunity in the Instant Case*

The Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks omitted). For a plaintiff to defeat a law enforcement officer's motion for summary judgment on qualified immunity grounds, the court must find 1) that taken the in the light most favorable to the plaintiff, the facts alleged show the officer's conduct violated a constitutional right, and 2) that the right asserted was clearly established at the time of the events at issue. *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 626–27 (4th Cir. 2007). In cases challenging a search or seizure pursuant to a warrant, only where a warrant application "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

The Fourth Circuit recently reviewed the application of qualified immunity at the summary judgment phase in *Graham v. Gagnon*. No. 15-1521, 2016 WL 4011156, at *7 (4th Cir. July 27, 2016) (finding summary judgment improper when testimony critical to establishing probable cause in an arrest warrant for obstruction of justice indicated that the plaintiff slammed a door on a police officer's foot, while facts in evidence indicated that the screen door was shut automatically via a pneumatic closer). However, the instant case is distinct from *Graham* in that Cullison has offered nothing to rebut Defendants' proffered evidence. The Court continues to interpret the admissible evidence in Cullison's favor, but acknowledges that all the facts at its disposal were provided by Defendants. Taken in that view, there was probable cause to obtain a warrant for Cullison's arrest at the time it was issued. Accordingly, Defendants' conduct did not violate his rights under the U.S. Constitution, and summary judgment is appropriate on the basis of qualified immunity. Because Article 26 of the Maryland Declaration of Rights is read in *pari*

*materia* with Fourth Amendment, *Purnell v. State*, 911 A.2d 867, 882 (Md. Ct. Spec. Ap. 2006), Defendants did not violate his state constitutional rights, either.

For the foregoing reasons, the Court will grant summary judgment in favor of Defendants Stouffer, Jones and Layton with respect to Counts VII and XV (violations of the Fourth and Fourteenth Amendments of the United States Constitution) and Counts VI and XIV (violations of the Maryland Declaration of Rights).

## C.        Tort Claims

Cullison has alleged that Defendants committed four different torts as recognized under Maryland law: False Arrest (Counts I and IX), False Imprisonment (Counts II and X), Malicious Prosecution (Counts III and XI) and Intentional Infliction of Emotional Distress (Counts IV and XII).  (ECF No. 21-1.)  Because evidence shows that the warrant for Cullison's arrest was issued upon a demonstration of probable cause, *see supra* Part V.B., summary judgment in the Defendants' favor is also appropriate on each of the tort claims.

The torts of false arrest and false imprisonment both require a showing by the plaintiff that the defendant(s) "deprived him or her of his or her liberty without consent and without legal justification."  *Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000).  A law enforcement officer acts with legal justification when he effects an arrest pursuant to a warrant that is based on probable cause.  *See Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012).  The evidence in the instant case demonstrates that Defendants had probable cause to believe Cullison was responsible for Gears' death; there is no dispute of material fact in this regard.  Therefore, Defendants did not commit the torts of false arrest or false imprisonment when they presented the evidence leading to his arrest.  Accordingly, summary judgment in favor of the Defendants is appropriate on Counts I, IX, II, and X.

To prevail in a claim of malicious prosecution, one must demonstrate that "1) the defendant instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in the plaintiff's favor; 3) the defendant did not have probable cause to institute the proceeding; and 4) the defendant acted with malice or a primary purpose other then [sic] bringing the plaintiff to justice." *Okwa*, 757 A.2d at 130.  Because the evidence demonstrates that Defendants had probable cause to support a criminal case against Cullison, the third element of the tort cannot be met, and it is not necessary to determine whether the Defendants acted with malice.  Summary judgment in the Defendants' favor is appropriate on Counts Counts III and XI.

To commit the tort of intentional infliction of emotional distress, one's conduct must be 1) intentional or reckless, 2) extreme and outrageous, and 3) causally connected to the resulting emotional distress, and 4) the emotional distress must be severe.  *Ford v. Douglas*, 799 A.2d 448, 451 (Md. 2002).  To qualify as outrageous and extreme, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal citations omitted).  An arrest pursuant to a warrant founded on probable cause does not amount to "extreme and outrageous" conduct.  Therefore, summary judgment in favor of the Defendants is appropriate on Counts IV and XII as well.

Because the evidence on the record, taken in the light most favorable to Cullison demonstrates that no reasonable finder of fact could find Defendants liable for any of the tort claims alleged, the Court need not pursue any analysis of Maryland statutory or common law immunity.  The reasons stated above are sufficient for the Court to grant summary judgment to Defendants Stouffer, Jones and Layton with respect to each of the state tort claims (Counts I–IV and IX–XII).

*VI.*	***Conclusion***

A separate order will issue granting all pending motions presented by Defendant Queen Anne County and by Defendants Jones, Layton, and Stouffer.  Plaintiff's motion for leave to file an amended complaint will be granted and his MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT will be denied.  Furthermore, the Court will require Plaintiff to promptly show cause why Defendants Rob Penny and the State of Maryland should not be dismissed from the case.

DATED this 6th day of September, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge